UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTLAKE STYRENE, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-2631 |
| | § | |
| UNITED STATES OF AMERICA, *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

MEMORANDUM, ORDER AND FINAL JUDGMENT

Pending before the court in this interpleader action is a motion for summary judgment by defendant Compass Bank (Dkt. 41), a motion for summary judgment by defendants Reaud, Morgan & Quinn, LLP ("RMQ") and Quality Contract Services, Inc. ("QCS") (Dkt. 44), and a motion for summary judgment by defendant Louisiana Crane Company, LLC ("LA Crane") (Dkt. 49). Having reviewed the motions, responsive filings, and the applicable law, the court finds that Compass Bank's and RMQ and QCS's motions (Dkts. 41, 44) should be GRANTED and LA Crane's motion (Dkt. 49) should be DENIED.

I. BACKGROUND

Texas State Bank, which is Compass Bank's predecessor-in-interest,[1] made four loans to QCS from 2004 to 2006 that totaled almost $9,000,000. Dkt. 41 & Exh. A. In connection with these loans and as security for QCS's performance under the notes, QCS executed a security agreement in favor of the Bank. *Id.* In the security agreement, QCS granted the Bank a security interest

---

[1] The court will use the term "the Bank" to refer to both Compass Bank and Texas State Bank.

covering all accounts and other rights to payment.[2]  *Id.*  The Bank filed this security interest with the Texas Secretary of State on August 11, 2004.  Dkt. 41 & Exh. C.

On December 18, 2007, the Bank and QCS entered into a Merchant Services Agreement ("MSA") whereby QCS assigned all of its respective accounts receivable the Bank.  Dkt. 41 & Exh. A-6.  This included current and future accounts receivable, so long as the Bank accepted the accounts.  *Id.*  QCS later submitted Invoice 1O7-139-RET for $846,123.21 to the Bank for purchase pursuant to the MSA.  Dkt. 41, Exh. A-7 at 13.  The invoice, which was dated April 24, 2008 and due May 24, 2008, was from QCS to Westlake for construction work QCS performed on Westlake's styrene plant, which is located in Lake Charles, Louisiana.  Dkt. 41 & Exh. A-7 at 13.  The Bank accepted the account.  Dkt. 41 & Exh. A-7.

QCS failed to pay the outstanding balance on its loans from the Bank when the notes matured, and the Bank exercised its right to sell and dispose of QCS's real and personal property in which it had a security interest.  Dkt. 41, Exh. A ¶ 6.  A public foreclosure sale was held in Orange County, Texas, on March 2, 2010.  *Id.* ¶ 7.  "[S]ubstantially all the personal property owned by [QCS], including but not limited to accounts receivable, was sold by single lot to Compass as the highest bidder, [and] Compass foreclosed its liens on certain real property pledged to Compass by [QCS] pursuant to the deeds of trust and loan documents."  *Id.*  After this sale, QCS still owed the Bank over $6,000,000.  *Id.* ¶ 8.

---

[2]  The agreement grants Compass Bank "a security interest in all of the Property described in this Agreement," including: "All rights I have now or in the future to payments including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned, whether or not I have earned such payment by performance.  This includes any rights and interests (including all liens and security interests) which I may have by law or agreement against any Account Debtor or obligor of mine."  Dkt. 41 & Exh. A, Exh. 5.

2

Westlake did not pay the $846,123.21 invoice from QCS for QCS's work on Westlake's styrene plant on its due date in May 2008. Instead, Westlake filed a lawsuit against QCS in state court in Harris County, Texas ("Westlake TX Lawsuit"), seeking a declaration as to the parties' obligations under the contract and seeking damages for breach of contract. Dkt. 41 at 4. QCS filed a counterclaim seeking the amount it was allegedly owed under the contract. *Id.* The Bank intervened and filed a counterclaim seeking all damages awarded to QCS based on the assignment of invoices under the MSA or pursuant to the security agreements. *Id.* at 5. RMQ was representing QCS. *Id.*

After Westlake initiated the Westlake Texas Lawsuit, QCS and LA Crane soon followed suit. On June 27, 2008, approximately one month after Westlake initiated the Westlake TX Lawsuit, QCS filed a petition against Westlake in the 14th Judicial District Court for Calcasieu Parish, Louisiana ("QCS LA Lawsuit"), alleging various tort claims and breach of contract. Dkt. 21, Exh. B. Then, on July 8, 2008, LA Crane filed a lawsuit in the 14th Judicial District Court for Calcasieu Parish of Louisiana against QCS ("LA Crane LA Lawsuit"). Dkt. 49 at 3; Dkt. 8, Exh. B.

On September 17, 2008, LA Crane obtained a default judgment in the LA Crane LA Lawsuit for $505,488.32. Dkt. 8-1; Dkt. 49 at 4. On November 3, 2008, LA Crane filed a writ of *Fieri Facias* in the QCS LA Lawsuit to satisfy the default judgment in the LA Crane LA Lawsuit. Dkt. 21-2; Dkt. 49 at 4. The purpose of the writ of *Fieri Facias* was to "**SEIZE THE INTEREST OF [QCS] IN THE [QCS LA LAWSUIT] IN ORDER TO SATISFY THE JUDGMENT OF [LA CRANE IN THE LA CRANE LA LAWSUIT].**" Dkt. 21-2. LA Crane domesticated the default judgment it obtained in the LA Crane LA Lawsuit in Texas on January 9, 2009. Dkt. 8, Exh. C.

In June 2010, QCS, RMQ, Compass Bank, Westlake, and several parties not at issue in this case entered into a settlement agreement whereby Westlake agreed to interplead $1,490,000 in the

District Courts of Harris County, Texas and join Compass Bank, RMQ, LA Crane, the Internal Revenue Service and any other parties designated by QCS, so that the court in which the action was filed could work out issues relating to which parties had priority claims to the settlement funds. Dkt. 41 at 5 & Exh. A-7(A). The parties agreed to execute an agreed final judgment in the Westlake TX Lawsuit, and a take nothing judgment was issued in that case on June 18, 2010. QCS also agreed to "take all steps necessary to dismiss the [QCS LA Lawsuit] with prejudice."[3] Dkt. 41, Exh. A-7(A). The settlement agreement resulted in the filing of this lawsuit, which was originally filed in state court in Harris County, Texas on June 29, 2010, and removed to this court by the United States of America on behalf of the Internal Revenue Service on July 23, 2010. Dkt. 1.

LA Crane argues that it is entitled to $507,538.32 plus accrued interest and additional attorneys' fees from the interpleaded funds, in satisfaction of the LA Crane LA Lawsuit judgment, which has been domesticated in Texas. Dkts. 8, 49. LA asserts that the LA Crane LA Lawsuit judgment and the writ of *fieri facias* are superior to all other claims, that Louisiana law controls and neither Compass Bank nor RMQ have perfected any claim in Louisiana, and that LA Crane's claims predate the actual creation of the funds through the settlement agreement as well as any claims by the United States of America on behalf of the Internal Revenue Service. Dkt. 49.

---

[3] Notwithstanding the agreement to dismiss the QCS LA Lawsuit, the lawsuit is still active. Dkt. 49. Under Louisiana law, the litigants in a suit that has been seized by a writ of *fieri facias* "cannot dismiss the suit or make any valid sale, compromise or adjustment of the suit to the prejudice of he seizing creditor or without his consent unless the amount to be received by the debtor in the compromise is sufficient to satisfy the seizing creditor's claim." La. Rev. Stat. Ann. § 13:3865 (2006). A writ of *fieri facias* involves an "involuntary relinquishment of a judgment debtor's interests." *King v. Ill. Nat'l Ins. Co.*, 2008-1491, pp. 10-11 (La. 4/3/09); 9 So.3d 780, 787. A judgment creditor may seize a litigious right, but "is generally prohibited from interfering with the progress of the suit." *Id.* at p. 12 n.8; 9 So.3d at 788; *see also* La. Rev. Stat. Ann. § 13:3864 ("[T]he seizing creditor shall not interfere with the progress of the suit."). The "seizure only gives the judgment creditor a lien or preference on what the debtor realizes from the suit." *King*, 2008-1491, p. 12 n.8; 9 So.3d at 788.

The Bank claims that it is entitled to the entire amount of funds interpleaded into the court's registry because it purchased an accounts receivable from QCS for $846,000 and also received a security interest in QCS's other accounts receivable which total in excess of $5,000,000.  Dkt. 41. The Bank contends that these interests were perfected by filing a financing statement with the State of Texas long before LA Crane's writ of *fieri facias* was obtained and before the Internal Revenue Service lien was filed, so its interests are superior to both LA Crane and the Internal Revenue Service.  *Id.*  The Bank asserts that Texas law applies to this dispute, but that even if Louisiana law applies, the Bank still has a priority interest to the funds.  Dkt. 51.

RMQ and QCS move for summary judgment to be granted in favor of the Bank.  Dkt. 44. RMQ states that it is entitled to the fees and expenses it incurred during its representation of QCS, but that the Bank has agreed that it will remit to RMQ its portion after the court rules that the Bank has a first priority interest to the funds.  Dkt. 44.  RMQ asserts that it "does not oppose an award of the full amount of interpleaded funds to Compass Bank."  Dkt. 44 at 2.

The United States likewise agrees with the Bank that the Bank's interest in the interpleaded funds is superior to that of the United States as well as the other claimants.  Dkt. 50.  Additionally, the United States concedes that RMQ's claim, which is derivative of the Bank's, is superior to that of the United States.  *Id.*  Since these two claims encompass the entire amount of the interpleaded funds, the United States notes that it is not entitled to any distribution from the funds for the tax liens it holds against QCS.  *Id.*

## II. ANALYSIS

LA Crane asserts that Louisiana law controls this action, and the Bank asserts that Texas law controls.  The court finds it unnecessary to engage in a lengthy choice-of-law analysis because whether Texas or Louisiana law applies, LA Crane's interest in the interpleaded funds is inferior to

the Bank's interest, which was perfected at the time LA Crane obtained its judgment and writ.

Under Texas law, a debtor who has sold an account receivable retains no rights in that account

receivable. Tex. Bus. & Com. Code Ann. § 9.318(a) (Vernon 2011). And, once the purchaser has

perfected its security interest under the Texas Uniform Commercial Code ("UCC"), a creditor of the

seller of the account receivable can obtain no rights to the account. *Id.* § 9.318(b), UCC cmt. 4.

Similarly, under Louisiana law, a "debtor that has sold an account . . . does not retain an ownership

interest in the collateral sold. . . . If the security interest of a buyer of accounts . . . is perfected the

usual result would take effect: transferees from and creditors of the seller could not acquire an

interest in the sold accounts . . . ." La. Rev. Stat. Ann. § 10:9-318(a) & UCC cmt. 4 (2002). LA

Crane received its default judgment in September 2008 and its writ in November 2008. The

judgment and writ were obtained *after* the Bank had perfected its security interest in QCS's accounts

receivable—in 2004—and had accepted the specific account pursuant to the MSA—earlier in 2008.

Thus, under either Texas or Louisiana law, the writ could not attach to the account.

LA Crane has two issues with this analysis. First, it asserts that the notices of its seizure of

QCS's interest in the QCS Louisiana Lawsuit were served prior to the negotiation and execution of

the settlement agreement, and that it thus has a priority interest. Dkt. 49. Second, it asserts that the

Bank's security interests were never perfected under Louisiana law. *Id.* The Bank, however, argues

that it *did* perfect its security interest under both Texas and Louisiana law prior to LA Crane's

issuance of the writ and that the account which was at issue in the QCS LA Lawsuit that LA Crane

attempted to seize with the writ belonged to the Bank, not QCS. Dkt. 51.

Under Louisiana law, the law of the jurisdiction in which a debtor is located governs

perfection, the effect of perfection or nonperfection, and the priority of a security interest in

collateral. La. Rev. Stat. Ann. § 10:9-301(1). A corporation is considered "located" in the state of

incorporation. *Id.* § 10:9-307(e).  QCS is incorporated in Texas.  Dkt. 41, Exh. D.  Thus, under Louisiana law, Texas law governs perfection, the effect of perfection or nonperfection, and the priority of the security interest in this case.

The Bank's security interest was perfected under Texas law when the Bank filed its security interest with the Texas Secretary of State on August 11, 2004.  *See* Dkt. 41, Exh. C.  The Bank's security interest in this particular account was additionally perfected at the time the Bank purchased the account through the MSA on or about April 24, 2008, as the Bank or its predecessors filed financing statements perfecting its interests in accounts subject to the MSA.  Dkt. 41, Exhs. A-6 & C.  Thus, there is no question that the Bank's interest in the account was perfected before LA Crane obtained the default judgment in September 2008, obtained the writ in November 2008, and domesticated its judgment in Texas in January 2009.  Because the Bank already had a perfected security interest in the account under Texas and Louisiana law before LA Crane obtained its judgment and writ and domesticated its judgment, the Bank's interest has priority.  Because the Bank's interest exceeds the amount of the funds in the court's registry, it is entitled to the entire amount, and LA Crane's writ has no effect.  The date of the settlement is of no consequence since the Bank's entitlement to the funds arose before the settlement.

In its response to the Bank's motion for summary judgment, LA Crane also asserts that it has a legal privilege under Article 3272 of the Louisiana Statutes Annotated, Louisiana Civil Code section 3272 and that it has a judicial mortgage under Louisiana Statutes Annotated, Louisiana Civil Code section 3299-3300.  Article 3272 provides a privilege to contractors, mechanics and materialmen.  This privilege, however, must be recorded with the recorder of mortgages.  LSA-C.C. art. 3272.  LA Crane has provided no documentation that it recorded such a privilege.  Sections 3299-3300 state that a "judicial mortgage is created by filing a judgment with the recorder of

mortgages." LSA-C.C. art. 3300. LA Crane has provided no evidence that it filed its judgment with the recorder of mortgages. Moreover, as LA Crane notes, under Louisiana law a "mortgage is preferred to the *unsecured* creditors of the mortgagor and to others whose rights become effective after the mortgage becomes effective as to them." LSA-C.C. art. 3307(3) (emphasis added). Here, the Bank has shown that its interest was perfected prior to LA Crane's judgment. Thus, even if LA Crane recorded the judgment with the recorder of mortgages, it would not take priority over the previously perfected security interest held by the Bank.

In sum, the Bank had a perfected security interest in the interpleaded funds, under both Texas and Louisiana law, before LA Crane obtained its default judgment, writ, and any other entitlements that LA Crane claims are connected with the judgment and writ, and the Bank's perfected interest is therefore superior to LA Crane's claim to the interpleaded funds. Accordingly, LA Crane's motion for judgment in its favor is DENIED, and the Bank's and RMQ and QCS's motions for judgment in favor of the Bank is GRANTED.

### III. Conclusion

LA Crane's motion for summary judgment (Dkt. 49) is hereby DENIED. The Bank's and RMQ and QCS's motions for summary judgment (Dkts. 41, 44) are hereby GRANTED. Judgment is entered in favor of the Bank in the amount of $1,486,244.40 plus interest accrued thereon from the date of the deposit of the interpleaded funds into the registry of the court.

This is a FINAL JUDGMENT.

Signed at Houston, Texas on June 11, 2012.

_____
Gray H. Miller
United States District Judge

8